COULTER et al.

v.

**DAYTON POWER & LIGHT COMPANY, Appellant;**
**Ohio Bell Telephone Company, Appellee, et al.**

[Cite as *Coulter v. Dayton Power & Light Co.* (1999), 134 Ohio App.3d 620.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 17602.

Decided July 30, 1999.

*Scott R. Thomas* and *Maria J. Papakirk,* for appellant.

*Edward L. Bettendorf,* for appellee.

WOLFF, Judge.

The Dayton Power & Light Co. ("DP&L") appeals from a judgment of the Montgomery County Court of Common Pleas, which entered judgment in favor of the Ohio Bell Telephone Co. ("Ohio Bell"), in a dispute over the applicability of a contractual indemnification provision.

The facts giving rise to this appeal are as follows.

In 1993, DP&L granted Ohio Bell an easement to use DP&L's land to install a fiber-optic cable. In the agreement, Ohio Bell agreed to indemnify DP&L for any loss, damage, or expense related to the easement. Two workers were subsequently injured while excavating the site, allegedly because DP&L had failed to adequately mark buried gas and electric lines, and the workers filed suit. DP&L filed a cross-claim against Ohio Bell based on the indemnification provision. DP&L filed a motion for summary judgment on the issue of indemnification, and the trial court denied the motion on May 20, 1997. On August 18, 1997, when other claims were still pending in the case, the trial court denied a DP&L motion for reconsideration and refused to grant Civ.R. 54(B) certification to its May 20, 1997 judgment entry denying summary judgment. The other claims were later settled so that the sole remaining issue in the case was whether DP&L was entitled to indemnification from Ohio Bell. At that point, the trial court concluded that it would make "no sense and would not be judicially economical now to have a trial on comparative negligence with an 'automatic' appeal of the indemnification issue" to the court of appeals. The court granted Civ.R. 54(B) certification on its May 20, 1997 order *nunc pro tunc* and "enter[ed] final judgment in favor of Ohio Bell on the indemnification question."

DP&L raises one assignment of error on appeal:

"The trial court erred to the prejudice of DP&L by improperly denying DP&L'S motion for summary judgment."

■ DP&L's argument under this assignment of error is threefold. First, DP&L claims that the trial court erred in concluding that the scope of the indemnification provision was ambiguous and that two sophisticated business entities cannot contractually allocate responsibility for damages resulting from the negligence of one party to the other party. Second, DP&L claims that the trial court erred in relying upon R.C. 2305.31 in concluding that the contractual indemnification provision was against public policy. Third, DP&L contends that, even if the indemnification provision was void as applied to damages resulting from its own negligence, DP&L was nonetheless entitled to indemnification for its attorney fees and costs.

The indemnification provision in the easement provides:

"In consideration for the [easement], [Ohio Bell] hereby agrees to indemnify and save [DP&L] free and harmless from any and all loss, damage, or expense, including but not restricted to attorneys fees and court costs, arising from, caused by or incident or related to, injuries or damages to property (including property of [Ohio Bell] ) or persons or the death of any person or persons, including but not restricted to employees and agents of the Owners, in the performance of their duties or otherwise; which may arise out of or be incident or related in any way

to the easement described above on [DP&L's] premises, subject, however, to the provisions of Section 2305.31 of the Revised Code of Ohio, if applicable, and provided further, that nothing herein shall require indemnification as to any claims against [Ohio Bell] arising under the Ohio Workers' Compensation Law. " * * *

"This easement is subordinate to all existing facilities of [DP&L], either above or below the surface. [DP&L] has attempted to accurately locate all of its underground facilities; however, [Ohio Bell] shall be responsible for any damage to said facilities whether accurately located or not."

The trial court found that these provisions were ambiguous because the first paragraph required Ohio Bell to indemnify DP&L for all loss, including damages to property and bodily injury, while the second paragraph required Ohio Bell to indemnify DP&L for damage to the underground facilities if they were not properly located, but was unclear as to "whether Ohio Bell is held responsible for *bodily injury* if the underground facilities are inaccurately located." (Emphasis *sic.*) The trial court construed the second paragraph to establish that "the entire agreement only relates to damage to the promisee's [DP&L] own property."

We disagree with the trial court's finding that the provisions of the easement were ambiguous as to the allocation of responsibility for damages, whether resulting from bodily injury or damage to property. In our view, the second paragraph did not narrow the scope of the first. Rather, it elaborated on the first paragraph by making clear that Ohio Bell's duty to indemnify included situations in which DP&L had failed to accurately locate all of its underground facilities. Moreover, the second paragraph specifically referred to underground facilities and damage thereto, which explains why there was no mention of responsibility for bodily injury in that section. The trial court's interpretation did not recognize that the second paragraph had a narrower scope than the first and ignored the plain language of the first paragraph indicating that Ohio Bell would hold DP&L harmless "from any and all loss, damage, or expense * * * arising from, caused by or incident or related to, injuries or damages to property * * * or persons" related to the easement. Thus, we find that these paragraphs are not inconsistent and that the trial court erred in concluding that the indemnification provision in the easement was ambiguous.

Moreover, Ohio law does not require that contracts purporting to hold an indemnitee harmless for its own negligence contain express language to that effect. In *Delco Products Div., Gen. Motors Corp. v. Dayton Forging & Heat Treating Co.* (Feb. 2, 1979), Montgomery App. No. 6017, unreported, 1979 WL 155686, we held that general language providing indemnification for "all liabilities, claims or demands for injuries or damages to any person or property growing out

of the performance of this contract" clearly and unequivocally included negligence by the indemnitee. *Id.* at 10. In so holding, we observed that it " 'is difficult to see how more comprehensive or inclusive language could have been used. Negligence might have been spelled out specifically, but this is not required.' " *Id.* at 8, quoting *Gen. Acc. Fire & Life Assur. Corp., Ltd. v. Smith & Oby Co.* (C.A.6,1959), 272 F.2d 581, 585, 11 O.O.2d 346, 349. Similarly, it is difficult to imagine an indemnification provision stated more broadly than the one contained in DP&L's contract with Ohio Bell, wherein Ohio Bell agreed "to indemnify and save [DP&L] free and harmless from any and all loss, damage, or expense, including but not restricted to attorneys fees and court costs, arising from, caused by or incident or related to, injuries or damages to property (including property of [Ohio Bell]) or persons or the death of any person or persons * * * in the performance of their duties or otherwise; which may arise out of or be incident or related in any way to the easement." Thus, we conclude that this language clearly encompassed indemnification for DP&L's own negligence. See, also, *Teledyne Osco Steel v. Woods* (1987), 39 Ohio App.3d 145, 529 N.E.2d 1271.

The Supreme Court of Ohio expressed a similar view of an indemnification agreement in *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 29 OBR 393, 505 N.E.2d 264, which addressed the general rule that indemnification agreements should be narrowly construed. In that case, the Supreme Court specifically declined to narrowly construe an indemnification agreement that protected an indemnitee from its own negligence where both parties were sophisticated business entities, finding that such a construction was unreasonable under the circumstances. The court stated that the rule of narrowly construing this type of indemnification agreement had been developed to protect a contracting party in a disparately weaker bargaining position from the stronger party's attempt to impose wholly inequitable burdens upon the weaker party. *Id.* at 47, 29 OBR at 395–396, 505 N.E.2d at 266. The court found that there was no need to construe indemnification provisions narrowly when the burden of indemnification had been assented to in a context of free and understanding negotiation. *Id.*

■ Because both parties to this agreement were sophisticated business entities that were not in disparate bargaining positions and that were certainly capable of looking out for their own interests, we conclude that the agreement between DP&L and Ohio Bell did require Ohio Bell to indemnify DP&L for damages resulting from DP&L's own negligence and that this requirement did not violate public policy absent a statutory provision to the contrary.

■ The trial court found that R.C. 2305.31 provided statutory authority for concluding that the indemnification provision violated public policy. R.C. 2305.31 states:

"A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnities against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees, or indemnities is against public policy and is void."

In sum, R.C. 2305.31 voids construction contracts that attempt to indemnify an indemnitee against liability arising out of or proximately caused by its own negligence.

The trial court found that the contract between DP&L and Ohio Bell fell within the ambit of R.C. 2305.31, which "voids a contract which attempts to indemnify DP&L against liability for damages arising out of bodily injury, proximately caused by the negligence of DP&L." In so concluding, the trial court noted that Ohio Bell's construction of an underground communication system on DP&L's property was "in connection with, or collateral to an agreement relative to the construction of an appliance including excavating connected therewith" and that the contract involved indemnification of the indemnitee, DP&L, for its own negligence.

Although the trial court correctly observed that DP&L sought indemnification for its own alleged negligence and that the type of work to be undertaken by Ohio Bell pursuant to the contract was the type of construction specified in R.C. 2305.31, the trial court's application of the statute to the arrangement between DP&L and Ohio Bell did not give effect to all of the statute's pertinent provisions. Significantly, R.C. 2305.31 applies only to contracts or agreements "pursuant to which * * * the promisee * * * has hired the promisor to perform work." In the context of such an employment relationship, R.C. 2305.31 prohibits the employer from shifting the responsibility for its own negligence onto an employee through an indemnification provision. This restriction is in keeping with the purpose underlying R.C. 2305.31 to require employers to provide employees with a safe place to work. *Lamb v. Armco, Inc.* (1986), 34 Ohio App.3d 288, 290, 31 OBR 610, 611–612, 518 N.E.2d 53, 55–56; *Best·v. Energized Substation Serv.* (Aug. 17, 1994), Lorain App. No. 93–CA–005737, unreported, 1994 WL 440471, at 10. The contract between DP&L and Ohio Bell, however, did not involve DP&L hiring Ohio Bell to perform construction work. Rather, the contract granted Ohio Bell an easement over DP&L property in the use of which Ohio Bell would

presumably hire others to perform construction work. Thus, the relationship between DP&L and Ohio Bell was not the type of relationship contemplated by the legislature when it enacted R.C. 2305.31. The cases cited by the trial court in support of its decision were not factually similar to this case but presented situations in which the indemnitee had contracted with the indemnitor to perform the type of construction work described in R.C. 2305.31. Thus, the trial court erred in concluding that the indemnification provision was void and against public policy pursuant to R.C. 2305.31.

Finally, DP&L contends that, even if it was not entitled to indemnification for damages attributable to its own negligence, it was nonetheless entitled to indemnification for its attorney fees and costs as provided in the parties' agreement. DP&L cites *Moore v. Dayton Power & Light Co.* (1994), 99 Ohio App.3d 138, 142, 650 N.E.2d 127, 130, in support of the severability of a provision providing indemnification for attorney fees and costs even where other portions of an indemnification provision are unenforceable on public policy grounds. Because we hold that DP&L is entitled to indemnification from Ohio Bell for all of its damages, this question is moot. DP&L is entitled to attorney fees and costs in addition to the other sums owed pursuant to the indemnification agreement.

The assignment of error is sustained.

The judgment of the trial court is reversed, and summary judgment will be entered in favor of DP&L.

*Judgment reversed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.