DANIEL KELLY, J.
¶ 1 Becker Property Services LLC ("Becker") and Cintas Corporation No. 2 ("Cintas") executed a contract containing indemnification and choice-of-law provisions. A dispute arose over whether the contract entitles Cintas to indemnification for damages caused by its own negligence. To answer that question, we must also resolve a threshold dispute: As between Wisconsin and Ohio, which law provides the rule of decision?
¶ 2 We hold that Ohio's law governs the parties' contract, and that Becker must defend and indemnify Cintas, even for damages caused by its own negligence. Consequently, we affirm the court of appeals, but (as we discuss below) on other grounds.[1]
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 3 A 2013 fire at Valentino Square (a senior living facility) caused approximately $900,000 in property damage after the facility's fire-suppression sprinkler system allegedly failed. Valentino Square's owner had contracted with Becker to manage the property. In that capacity, Becker had contracted with Cintas[2] in 2012 to perform certain services, including regular inspections of the fire-suppression system (the "Contract"). The fire-suppression system allegedly failed because water in the system accumulated, froze, and then burst the pipes.
¶ 4 Plaintiffs (the owner of Valentino Square, several tenants, and the property insurers) sued Cintas, claiming the fire-suppression system's pipes would not have burst but for Cintas's negligent performance of its duties, or its breach of the Contract's implied warranty that it would perform its duties in a workmanlike manner. Cintas tendered the defense of the matter to Becker pursuant to the Contract's indemnity clause.
¶ 5 When Becker rejected the tender, Cintas impleaded it as a third-party defendant. Cintas sought indemnification for any damages for which it may be held *81 liable to the plaintiffs, the costs of defense (including attorney's fees), and the costs of enforcing the indemnification provision (including attorney's fees).
¶ 6 Cintas moved for summary judgment on its claim that Becker breached its obligation to defend and indemnify. Cintas asserted that Ohio law should provide the rule of decision by virtue of the Contract's choice-of-law provision. Becker filed a cross-motion for summary judgment, arguing that the Contract does not require it to defend or indemnify Cintas for its own negligence. Specifically, it argued that under Wisconsin law, contracts purporting to indemnify a party for its own negligence require a heightened level of clarity to be enforceable (the "strict construction" rule).[3] According to Becker, the strict construction of indemnification provisions is a public policy important enough to defeat the Contract's choice-of-law clause.
¶ 7 The circuit court denied Cintas's motion and granted Becker's. It agreed that the strict-construction rule embodied a public policy so important that the parties cannot be allowed to contract around it. It then concluded that the Contract's indemnification clause did not satisfy that rule. It said the Contract "does not have any specific and express statement ... to the effect that Cintas gets coverage for its own negligent acts," and it does not convey that "the purpose and unmistakable intent of the parties in entering into the contract was for no other reason than to cover losses occasioned by the indemnitee's own negligence." However, the court added that, if Ohio law had applied instead, the indemnification provision would have been sufficient to require Becker to indemnify Cintas for its own negligence. Consequently, the circuit court dismissed Cintas's third-party complaint against Becker.
¶ 8 The court of appeals reversed. It held that, even under Wisconsin law, the Contract required Becker to defend and indemnify Cintas for its own negligence and for the breach of implied warranty claim.[4] We granted Becker's timely petition for review, and now affirm.
II. STANDARD OF REVIEW
¶ 9 The circuit court decided this matter on cross-motions for summary judgment. We review the disposition of such motions de novo, applying the same methodology the circuit courts apply. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987) ; see also Borek Cranberry Marsh, Inc. v. Jackson Cty., 2010 WI 95, ¶ 11, 328 Wis. 2d 613, 785 N.W.2d 615 ("We review the grant of a motion for summary judgment de novo, ...."). First, we "examine the pleadings to determine whether a claim for relief has been stated." Green Spring Farms, 136 Wis. 2d at 315, 401 N.W.2d 816. Then, "[i]f a claim for relief has been stated, the inquiry ... shifts to whether any factual issues exist." Id. Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a *82 judgment as a matter of law." Wis. Stat. § 802.08(2) (2015-16); see also Columbia Propane, L.P. v. Wis. Gas Co., 2003 WI 38, ¶ 11, 261 Wis. 2d 70, 661 N.W.2d 776 (citing Wis. Stat. § 802.08(2) (2001-02) ).
¶ 10 The only dispute before us is the proper interpretation of a contract. This presents a question of law, which we review de novo. Deminsky v. Arlington Plastics Mach., 2003 WI 15, ¶ 15, 259 Wis. 2d 587, 657 N.W.2d 411 ("Interpretation of a contract is a question of law which this court reviews de novo."); see also Drinkwater v. Am. Family Mut. Ins. Co., 2006 WI 56, ¶ 14, 290 Wis. 2d 642, 714 N.W.2d 568 ("This choice-of-law determination is a question of law subject to independent appellate review."); Beilfuss v. Huffy Corp., 2004 WI App 118, ¶ 6, 274 Wis. 2d 500, 685 N.W.2d 373 ("Whether ... the choice of forum clause and choice of law clause are enforceable requires interpretation of the employment agreement. Interpretation of a contract is a question of law which this court reviews de novo.").
III. DISCUSSION
¶ 11 Before we can determine the enforceability of the Contract's indemnification provision, we must know which state's law to apply. Therefore, we begin with whether we must honor the parties' agreement that Ohio's law controls the interpretation of their Contract. We will then determine whether the Contract requires indemnification for Cintas's own negligence and the breach of implied warranty claim.
A. Choice of Law
¶ 12 The parties agree that the Contract subjects itself to Ohio's law;[5] they disagree over whether we should enforce that provision. Becker says doing so would obviate and bring to naught one of Wisconsin's important public policies, viz., the strict construction of indemnification promises.[6] Cintas says a rule of construction cannot embody a public policy so important that it could nullify the parties' choice of controlling law. For the following reasons, we agree with Cintas.
¶ 13 There is no doubt that, generally speaking, parties are free to choose the law governing their contracts. Jefferis v. Austin, 182 Wis. 203, 205, 196 N.W. 238 (1923) ("That parties to a contract may expressly or impliedly agree that the law of a jurisdiction ... shall control is beyond question."). But there is a caveat: They may not use their freedom to escape "important public policies of a state whose law would be applicable if the parties['] choice of law provision were disregarded." Bush v. Nat'l Sch. Studios, Inc., 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987).
¶ 14 Therefore, our task is to decide whether our practice of strictly construing indemnification provisions embodies a public policy so important that parties may not avoid it. While we have previously said that "[a] precise delineation of those policies which are sufficiently important to warrant overriding a contractual choice of law stipulation is *83 not possible,"[7] we have at least described some of the characteristics by which we might recognize them. They are policies that "make a particular type of contract enforceable," or that "make a particular contract provision unenforceable," or that "protect a weaker party against the unfair exercise of superior bargaining power by another party." Id. at 643, 407 N.W.2d 883. Courts (not necessarily ours) have seen those characteristics in, for example, usury laws, unconscionability doctrines, fair dealership laws, prohibitions on covenants not to compete, and statutes of frauds. Id. at 643, 407 N.W.2d 883 & n.1.[8]
¶ 15 Our strict construction rule contains none of the characteristics indicative of a policy that should trump a choice-of-law provision. The rule does not address the enforceability of a type of contract, or a type of contract provision. And it applies without respect to the parties' relative bargaining power. The rule's function is simply to ensure the parties actually intended for the indemnitee to be indemnified not just for the negligence of others for which it might be responsible, but for the indemnitee's own negligence as well. See, e.g., Hastreiter v. Karau Bldgs., Inc., 57 Wis. 2d 746, 748, 205 N.W.2d 162 (1973) ("The rule relied on by the tenant [i.e., strict construction of indemnification agreements that indemnify the indemnitees for their own negligence] is a rule of construction. The purpose of the construction of an agreement is to ascertain the intent of the parties."). As such, this is a rule of caution, not prohibition.
¶ 16 If a cautionary rule of construction were enough to nullify a choice-of-law provision, we would unnecessarily impair "certainty and predictability in contractual relations." See Bush, 139 Wis. 2d at 642, 407 N.W.2d 883 ; see also Thurner Heat Treating Co. v. Memco, Inc., 252 Wis. 16, 24, 30 N.W.2d 228 (1947) ("It is the policy of the law not only to encourage the embodiment of specific and material provisions in a contract, but in the interest of certainty and fair dealing, to require a plain and fair statement of terms."). Every law, whether statutory or common, is-at some level-an embodiment of policy. Because spotting the "important" public policies amongst all the rest is an inexact endeavor, we do well to keep that category narrowly focused. If it were to expand beyond its essential kernel, certainty and predictability in contractual relations would erode in like measure because parties would find it increasingly difficult to know which provisions or contracts a court might preempt. Expanding the "important" category far enough to reach our rule of strict construction would make virtually any contract provision potentially subject to the public policy caveat. And that would leave parties perennially wondering whether we will honor their choice-of-law decisions. We decline Becker's invitation to do so, and hold that our practice of strictly construing indemnification provisions is not so important that it will defeat a contract's choice-of-law provision.
¶ 17 We should not honor the choice-of-law provision, Becker said, for the additional reason that doing so would allow Cintas to escape Wisconsin's public *84 policy that indemnification provisions of this sort must be conspicuous. Even if Becker is right about the conspicuousness requirement (a subject we do not address), it provided no argument capable of invoking the "important public policy" exception to the rule that choice-of-law clauses are enforceable. Because every state law embodies a public policy, it is in the very nature of choice-of-law clauses that they substitute one state's policies for another. And still we enforce them. Under this exception, it is only when such clauses obviate an "important public policy" that we set them aside. Becker did not say why the conspicuousness requirement (if requirement it be) rises from the ranks of workaday public policies to join the elites that are so important we do not allow parties to contract around them. It provided no argument, no examples, no analogies-it did not even call this policy "important," much less provide a basis upon which we could declare it to be so. We will not develop an argument on Becker's behalf when Becker itself has chosen not to advance one. See Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis., 2005 WI 93, ¶ 180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").
¶ 18 Becker also argued that we should not enforce the choice-of-law provision because it is not conspicuous (that is, the provision is not set apart from the rest of the contract through a larger font, emphasis, or other mechanism designed to call a party's attention to it). It cites no authority for the proposition, but asserts that if the choice-of-law provision obviates a law that requires part of the contract to be conspicuous, then the choice-of-law provision must itself be conspicuous. It says this must be so because "[t]he conspicuousness rule derives from the public policy requirement that the signer of a contract be unmistakably informed of the rights and duties at issue, in language that clearly and unequivocally communicates to the signer the nature and significance of the document being signed." The conclusion, however, does not follow from the premise. A conspicuous choice-of-law provision tells a contracting party nothing more about its indemnification obligations than an in conspicuous choice-of-law provision. It could be far and away the most conspicuous part of the contract and still it would merely tell the parties which state's law will control the contract. Its conspicuousness would hold no hint as to whether the selected state's laws are more or less favorable with respect to any given part of the contract.
¶ 19 We have never held that a contract's choice-of-law provision must be conspicuous, and we see no reason to do so today. Therefore, we will determine the enforceability and meaning of the Contract's indemnification provision using the law of the State of Ohio.
B. Indemnification
¶ 20 Becker argues that, even under Ohio law, the indemnification provision is unenforceable because it is ambiguous.[9] The Contract says, in relevant part:
Purchaser [Becker], at its own expense, shall defend, indemnify and hold harmless Seller [Cintas] from any claim, *85 charge, liability, or damage arising out of any goods or services provided by Seller hereunder, including any failure of the goods or services to function as intended. Purchaser acknowledges that Seller shall have no liability or responsibility for any loss or damage to persons or property resulting from any fire or equipment malfunction.
Becker says this language does not plainly state that Becker must indemnify Cintas for damages arising from Cintas's own negligence.
¶ 21 Ohio says the purpose of scrutinizing a contract is to find and apply the parties' intent: "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth., 78 Ohio St.3d 353, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Id. (quoted source omitted); see also Worth v. Aetna Cas. & Sur. Co., 32 Ohio St.3d 238, 513 N.E.2d 253, 256 (1987) ("The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used."). In applying that language, "common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co., 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978).
¶ 22 With respect to any alleged ambiguity in contractual language, the rule in Ohio is that "quoties in verbis nulla est ambiguitas ibi nulla expositia contra verba fienda est." Lawler v. Burt, 7 Ohio St. 340, 349-50 (Ohio 1857) (quoted source omitted). That is to say, "[i]n the absence of ambiguity, no exposition shall be made which is opposed to the express words of the instrument." Herbert Broom, A Selection of Legal Maxims, Classified and Illustrated 176 (1845); Alexander, 374 N.E.2d at 150 ("[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").
¶ 23 The Contract's indemnification provision is not ambiguous. To the contrary, any greater explicitness regarding its coverage of Cintas's own negligence would come at the cost of the provision's broad scope. The duty to defend and indemnify applies to "any claim, charge, liability, or damage arising out of any goods or services provided by Seller [Cintas]." (Emphasis added.) The term "any," of course, admits of no exceptions. And that term describes both the nature of the attempt to hold Cintas liable (claims, charges, etc.), as well as the source of harm (goods or services). With respect to the latter, the Contract even repeats itself for clarity, stating that the duty to defend and indemnify "include[es] any failure of the goods or services to function as intended." The "goods and services" to which this phrase refers, of course, are those supplied by Cintas. The indemnification provision left no possible misunderstanding about the effect of its language. The same paragraph goes on to say that "Purchaser [Becker] acknowledges that Seller [Cintas] shall have no liability or responsibility for any loss or damage to persons or property resulting from any fire or equipment malfunction." Cintas would have no such liability or responsibility because of the immediately preceding sentence, which made that loss or damage Becker's responsibility.
¶ 24 We could not say this language does not cover Cintas's own negligence without *86 doing considerable damage to the Contract. First, we would need to remove the term "any" each time it appears in the indemnification provision to create the possibility that some claims or causes of damage might not be included. But that would still leave Becker's acknowledgement that the effect of the indemnification language would leave Cintas free of any responsibility for damage or loss consequent upon a fire or equipment malfunction. Therefore, Becker's preferred reading would require elimination of the entire sentence containing that acknowledgment. In sum, we would need to eliminate over half of the Contract's indemnification provision just so it could plausibly be called ambiguous. Neither logic nor Ohio's law requires us to excise language for the purpose of creating an ambiguity that could then be exploited by one of the parties to the Contract.
¶ 25 Nonetheless, Becker says other contractual provisions, read in conjunction with the indemnification language, make the duty to defend and indemnify ambiguous.[10] Specifically, it calls our attention to the language on the first page of the Contract promising that "[a]ll work performed will be according to NFPA, State, and City Fire Department requirements and is guaranteed, insured and done by licensed personnel."(Emphasis added.) Neither a guaranty nor a promise of insurance means anything, it reasons, if the indemnification provision shields Cintas from any and all responsibility for the goods and services it provides.
¶ 26 This argument has some superficial attractiveness, but it ultimately cannot bear the weight Becker assigns it. Becker believes that, if the indemnification provision really does excuse Cintas from responsibility for its own negligence, then the promise of guaranteed work must be illusory. However, neither provision negates or makes the other ambiguous because the Contract actually does contain a guaranty. It provides that "[c]laims for defective goods or negligent services must be made within thirty (30) days after delivery and Purchaser's exclusive remedy shall be, at Seller's option, replacement of the defective goods or remedying of any negligence in services or credit or refund of the purchase price paid." Becker offers no authority for the proposition that a limited guaranty is necessarily inconsistent with an indemnification provision that covers the indemnitee's own negligence. Nor is there any readily-apparent reason that the two provisions cannot comfortably coincide in the same contract. And if they can co-exist, we must give effect to both terms. German Fire Ins. Co. v. Roost, 55 Ohio St. 581, 45 N.E. 1097, 1099 (1897) ("[N]o provision [of a contract] is to be wholly disregarded because [it is] inconsistent with other provisions, unless no other reasonable construction is possible, .... If reasonable effect can be given to both, then both are to be retained.").
¶ 27 The Contract's promise that all work would be insured is similarly incapable of calling the indemnification provision's meaning into question. Buying an insurance policy does not create exposure to liability otherwise disclaimed. Nor could Cintas's representation that it has such a policy create in Becker a contract- *87 based expectation that Cintas would accept liability for the risks covered by the policy. With respect to which party will shoulder the responsibility to defend and indemnify Cintas, the representation that Cintas carries an insurance policy is, at most, a nebulous suggestion that an insurance company is available to discharge that duty. In contrast, the Contract's indemnification provision is a specific and explicit mandate that Becker must accept that responsibility to defend and indemnify Cintas. So even if there were a conflict between the Contract's representation regarding insurance and its indemnification provision (and we do not believe there is), the specific provision would control. See Marusa v. Erie Ins. Co., 136 Ohio St.3d 118, 991 N.E.2d 232, 235 (2013) ("When faced with provisions that are arguably in conflict, we apply the more specific provision."); German Fire Ins. Co., 45 N.E. at 1099 ("[A] special provision will be held to override a general provision only where the two cannot stand together. If reasonable effect can be given to both, then both are to be retained.").
¶ 28 The Contract's indemnification provision is not ambiguous. Therefore, we hold that it plainly requires Becker to defend and indemnify Cintas in the underlying action, even with respect to Cintas's own negligence.
*
¶ 29 Ohio's law as it specifically relates to indemnification agreements confirms our conclusion.[11] Ohio courts examine such agreements just like any other. Portsmouth Ins. Agency v. Med. Mut. Of Ohio, 188 Ohio App.3d 111, 934 N.E.2d 940, 944 (2009) ("Indemnity agreements must be interpreted in the same manner as other contracts."). And they are enforceable to the extent they do not contradict Ohio's public policy. Glaspell v. Ohio Edison Co., 29 Ohio St.3d 44, 505 N.E.2d 264, 266 (1987) ("[A]bsent specified public policy exceptions, the law of Ohio generally allows enforcement of indemnity agreements."). But the public policy exceptions are to be narrowly applied:
In a free and democratic society, freedom of contract is the general rule; public-policy limits are the exception. The doctrine does not grant courts a roving commission to police the terms of agreements and must be cautiously applied lest the exception swallow the rule. The Ohio Supreme Court has repeatedly admonished the courts against the loose application of "public policy" to invalidate agreements, even in the context of ordinary contracts between private parties ....
Stickovich v. City of Cleveland, 143 Ohio App.3d 13, 757 N.E.2d 50, 59 (2001). The parties have not identified, nor have we found, any public policy forbidding indemnification provisions in the type of contract between Cintas and Becker.[12]
¶ 30 Indemnification agreements covering the indemnitee's own negligence *88 are enforceable as well. However, Ohio has a rule of strict construction similar to our own: "Where it is alleged that the agreement protects an indemnitee from the financial consequences of his own negligence, the greater weight of authority, particularly in Ohio, would construe the words of such an agreement most narrowly." Glaspell, 505 N.E.2d at 266. The rule applies when the contracting parties have such disparate bargaining power that one can impose inequitable conditions on the other. See Coulter v. Dayton Power & Light Co., 134 Ohio App.3d 620, 731 N.E.2d 1172, 1175 (1999) ("[T]he rule of narrowly construing this type of indemnification agreement had been developed to protect a contracting party in a disparately weaker bargaining position from the stronger party's attempt to impose wholly inequitable burdens upon the weaker party.").
¶ 31 The strict construction rule does not apply, however, "when such burden of indemnification was assented to in a context of free and understanding negotiation." Glaspell, 505 N.E.2d at 266. That context typically is present when the contracting parties are capable business entities. See id. at 267 ("The parties in the case before us are commercial enterprises of sufficient size and quality as to presumably possess a high degree of sophistication in matters of contract."); Prudential Ins. Co. of Am. v. Corp. Circle, Ltd., 103 Ohio App.3d 93, 658 N.E.2d 1066, 1069 (1995) ("While clauses limiting the liability of the drafter are ordinarily strictly construed, such strict construction need not be applied in the interpretation of an exculpation or indemnification agreement entered into between business entities in a context of free and understanding negotiation." (emphasis omitted) ).
¶ 32 We think Becker is sufficiently sophisticated that it does not fall within the category of parties the strict construction rule is meant to protect. Although the record does not disclose a great deal about Becker, the Contract discloses that it manages at least ten apartment complexes in southeastern Wisconsin. Managing that number of properties requires at least some familiarity with matters of contract. It also suggests that Becker is in a position to intelligently negotiate the economic terms of its contracts without being overborne by its counterparties.
¶ 33 However, even if we were to conclude that Becker is entitled to the protection offered by the rule of strict construction, the Contract's indemnification provision more than adequately expresses the intention that Cintas would be indemnified for its own negligence. Ohio's Supreme Court described this rule as follows:
"Such an interpretation should not be given a contract that would make the appellant responsible for the consequence of a negligent act of the appellee unless no other meaning can be ascribed to it. If a doubt existed as to its meaning, the court would resolve that doubt against the contention that the contract was intended to indemnify appellee against its own negligence. Every presumption is against such intention."
George H. Dingledy Lumber Co. v. Erie R. Co., 102 Ohio St. 236, 131 N.E. 723, 725 (1921) (quoting Mitchell v. S. Ry. Co., 124 Ky. 146, 74 S.W. 216, 217 (1903) ). Ohio law does not, however, "require that contracts purporting to hold an indemnitee harmless for its own negligence contain express language to that effect." Coulter, 731 N.E.2d at 1174.
¶ 34 In this case, the same characteristics that make the Contract's indemnification provision unambiguous also demonstrate it satisfies the requirements of the *89 strict construction rule. Interpreting the Contract to not cover Cintas's own negligence would require a wholesale revision to so much language that we would be essentially reconstructing the agreement on behalf of Becker to avoid a conclusion favorable to Cintas. "[N]o other meaning can be ascribed to" the indemnification provision than the one we have described. See George H. Dingledy Lumber Co., 131 N.E. at 725 (quoted source omitted). Nor is there any "doubt ... as to its meaning." See id.
IV. CONCLUSION
¶ 35 The parties agreed that Ohio law would control the Contract, and no public policy requires us to preempt their agreement. The Contract's indemnification agreement unambiguously requires Becker to defend and indemnify Cintas even for its own negligence, and this is true regardless of whether we apply Ohio's rule of strict construction. Therefore, we affirm the decision of the court of appeals.
By the Court. -The decision of the court of appeals is affirmed.

This is a review of an unpublished decision of the court of appeals, American Family Mutual Insurance Co. v. Cintas Corp. No. 2, No. 2015AP2457, unpublished slip op., 375 Wis.2d 797, 2017 WL 1326112 (Wis. Ct. App. Apr. 11, 2017), reversing an order of the Milwaukee County Circuit Court, the Honorable John J. DiMotto presiding.

Cintas is incorporated in Ohio and has its principal place of business in Ohio.

Spivey v. Great Atl. & Pac. Tea Co., 79 Wis. 2d 58, 63, 255 N.W.2d 469 (1977) (stating that "[t]he general rule accepted in this state and elsewhere is that an indemnification agreement will not be construed to cover an indemnitee for his own negligent acts absent a specific and express statement in the agreement to that effect," and also establishing that "where the indemnitor, ... is itself free of negligence, the obligation to indemnify an indemnitee for its own negligence must be clearly and unequivocally expressed in the agreement").

The court of appeals did not address the choice-of-law question.

The Contract says, in part: "The rights and obligations of the parties contained herein shall be governed by the laws of the State of Ohio, excluding any choice of law rules which may direct the application of the laws of another jurisdiction."

"In cases where the damage results solely from the negligence of the indemnitee, and the indemnitee seeks recovery from the indemnitor, this court and the overwhelming majority of other state courts apply the rule that the indemnity contracts will be strictly construed." Algrem v. Nowlan, 37 Wis. 2d 70, 76, 154 N.W.2d 217 (1967).

Bush v. Nat'l Sch. Studios, Inc., 139 Wis. 2d 635, 643, 407 N.W.2d 883 (1987).

See also Kellogg v. Larkin, 3 Pin. 123, 137 (1851) ("Contracts against public policy are divided, by MR. STORY, into seven classes, as follows: 1. Contracts in restraint of trade; 2. Contracts in restraint of marriage; 3. Marriage brokerage contracts; 4. Wagers and gaming; 5. Contracts to offend against the laws and public duty; 6. Usury, and 7. Trading with an enemy.").

"Language is ambiguous if it is reasonably susceptible of two or more constructions." McClorey v. Hamilton Cty. Bd. of Elections, 130 Ohio App.3d 621, 720 N.E.2d 954, 957 (1998). "A contract 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.' " Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth., 78 Ohio St.3d 353, 678 N.E.2d 519, 526-27 (1997) (quoting Ohio Crane Co. v. Hicks, 110 Ohio St. 168, 143 N.E. 388, 389 (1924) (per curiam) ).

We understand Becker's argument as encouraging us to respect Ohio's recognition that "[a] fundamental principle of contract construction requires that the document be read as a whole." Monsler v. Cincinnati Cas. Co., 74 Ohio App.3d 321, 598 N.E.2d 1203, 1209 (1991) ; see also McClorey, 720 N.E.2d at 956 ("In the construction of a written contract, it will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."). We agree that Ohio's law requires us to read the Contract as a whole.

Becker argued that an indemnification provision that indemnifies an indemnitee for its own negligence must be conspicuous under Wisconsin's law, citing Wis. Stat. § 401.201(2)(f) (2015-16) and Deminsky v. Arlington Plastics Machinery, 2003 WI 15, 259 Wis. 2d 587, 657 N.W.2d 411. However, it offered no similar argument with respect to Ohio's law. We generally do not address arguments the parties have not made, and we see no reason to depart from that tradition here. See Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis., 2005 WI 93, ¶ 180 n.40, 282 Wis. 2d 250, 700 N.W.2d 768 ("We will not address undeveloped arguments.").

Ohio does not allow indemnification agreements in construction contracts, employment contracts, or illegal contracts. See Worth v. Aetna Cas. & Sur. Co., 32 Ohio St.3d 238, 513 N.E.2d 253, 257 (1987) ; Glaspell v. Ohio Edison Co., 29 Ohio St.3d 44, 505 N.E.2d 264, 266 (1987) (citing cases).