PER CURIAM.
¶1 Poblocki Holdings, LLC, et al. (Poblocki) appeal from an order granting summary judgment to David J. Drury, et al. (Drury). Poblocki challenges both the grant of summary judgment and the circuit court's earlier dismissal of its counterclaims. For the reasons that follow, we affirm.
¶2 This case arises from the sale of a sign company on January 12, 2015. Poblocki purchased the company from Drury for $22 million pursuant to a Membership Interest Purchase Agreement (Purchase Agreement). Part of that payment ($1.65 million) was placed in an escrow account to secure Drury's contractual obligations.
¶3 Exactly one year later, Poblocki submitted a notice of claim to the escrow agent asking that it continue to hold the funds pending resolution of certain indemnification claims against Drury. In response, Drury advised the agent that Poblocki's notice was untimely under the parties' Escrow Agreement and requested distribution of the funds. In the face of conflicting instructions, the agent retained the funds.
¶4 Drury subsequently filed suit, seeking a ruling that Poblocki's notice of claim to the escrow agent was untimely and that Drury was entitled to the funds. Poblocki filed counterclaims alleging that Drury had breached the Purchase Agreement and committed fraud by misrepresenting the financial condition of the company (specifically, the company's backlog of projects).[1] Drury moved to dismiss the counterclaims, and the circuit court largely granted the motion.[2]
¶5 Eventually, both parties moved for summary judgment. The circuit court granted summary judgment in favor of Drury, concluding that Poblocki's notice of claim to the escrow agent was untimely and that Drury was entitled to the funds. This appeal follows.
¶6 On appeal, Poblocki challenges both the grant of summary judgment and the earlier dismissal of its counterclaims. We review both rulings de novo, applying the same standards as the circuit court. See Chapman v. B.C. Ziegler & Co. , 2013 WI App 127, ¶2, 351 Wis. 2d 123, 839 N.W.2d 425 ; H.A. Friend & Co. v. Professional Stationery, Inc. , 2006 WI App 141, ¶8, 294 Wis. 2d 754, 720 N.W.2d 96.
¶7 The issues in this case largely turn on the interpretation of the parties' Purchase Agreement and Escrow Agreement. This too is a matter that we review de novo. See American Family Mut. Ins. Co. v. Cintas Corp. No. 2 , 2018 WI 81, ¶10, 383 Wis. 2d 63, 914 N.W.2d 76 (the interpretation of a contract presents a question of law).
¶8 We begin our analysis with Poblocki's counterclaims. Poblocki first contends that it pled a viable claim for breach of contract. Specifically, it asserts that Drury's alleged failure to disclose a drop in backlog a month before closing constituted a "Material Adverse Effect" in violation of Section 4.1.17 of the Purchase Agreement.
¶9 Section 4.1.17 is entitled "Events Since Balance Sheet Date," and states, in part, that "Since the Balance Sheet Date [defined as November 30, 2014], the Business has not suffered any Material Adverse Effect." Material Adverse Effect is defined in the Purchase Agreement to include any "inaccuracy," "change in circumstance," "loss," or "fact" which has a "material adverse effect" on the "business," "operations," or "condition (financial or other)" of the company, subject to carve-outs for, e.g., general downturns in the economy and geopolitical events.
¶10 We are not persuaded that Drury's alleged failure to disclose a drop in backlog a month before closing violated the above provision. By its nature, backlog is a limited tool in assessing the financial condition of a company. It is not a definitive statement about a company's future economic performance; rather, it is simply a snapshot of how much work a company has under contract at a given time, which will necessarily fluctuate and may not even come to fruition. Accordingly, a drop in backlog in a given month, by itself, does not equate to a material adverse effect on a company's financial condition.
¶11 Aside from its nature, though perhaps because of it, backlog is not a part of the Purchase Agreement. It does not appear in the body of the Purchase Agreement, which is extremely detailed, nor does it appear in the numerous disclosure schedules or exhibits. This is significant, as the Purchase Agreement makes clear in its integration/no-reliance clauses that (1) there were no other representations or warranties regarding the financial condition of the company outside of the Purchase Agreement[3] and (2) the parties were not relying on any such information, thereby waiving their right to assert a claim based upon it.[4]
¶12 In light of the foregoing, we decline Poblocki's invitation to shoehorn backlog into the Purchase Agreement via its proposed reading of Section 4.1.17. If Poblocki wanted to hold Drury to a representation or warranty regarding backlog, it could have bargained for that inclusion. Because it did not, we conclude that the circuit court's dismissal of Poblocki's breach of contract claim was proper.
¶13 We turn next to Poblocki's fraud claims. Poblocki asserted both statutory and common law fraud claims based upon Drury's alleged misrepresentations about backlog. It submits that such claims are viable, as the Purchase Agreement preserves the parties' extra-contractual remedies in the event of "fraud or willful misconduct."[5]
¶14 Again, we are not persuaded by Poblocki's arguments. Even if Poblocki retained a general right to assert fraud claims under the Purchase Agreement, that does not mean that it can do so here. The problem with its claims is that of reliance or the lack thereof. Poblocki could not have relied upon alleged misrepresentations about backlog because (1) there is no mention of it in the Purchase Agreement and (2) Poblocki specifically disclaimed relying upon any representations or warranties outside of the Purchase Agreement. Without reliance, there can be no fraud. See State v. Abbott Labs , 2012 WI 62, ¶52, 341 Wis. 2d 510, 816 N.W.2d 145 (recognizing that reliance is an element of a fraud claim). Thus, we conclude that the circuit court's dismissal of Poblocki's fraud claims was also proper.
¶15 The final issue that we consider is the circuit court's grant of summary judgment. As noted, the court concluded that Poblocki's notice of claim to the escrow agent was untimely and that Drury was entitled to the funds. Poblocki concedes that its notice was untimely under the Escrow Agreement, however, it maintains that the funds should nevertheless remain in escrow pending a final resolution of its indemnification claims against Drury.
¶16 Under the Escrow Agreement, the agent was required to disburse funds to Drury on the first anniversary of the closing date, which was January 12, 2016.[6] Poblocki did not file its notice of claim before this date (again, Poblocki filed its notice on January 12, 2016). However, it attempts to extend the disbursement date by pointing out that, under the Purchase Agreement, it had sixteen months from closing to make an indemnification claim.[7]
¶17 We are not convinced that the Purchase Agreement requires the escrow agent to retain funds for a period longer than the Escrow Agreement allows. If successful with its indemnification claims, Poblocki can still recover fully against the promissory note between the parties. It just cannot recover against the escrow funds which must be disbursed. That is what the parties bargained for, and we will not rewrite their agreements for them.[8]
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5. (2017-18).

According to Poblocki, the company's backlog dropped in December 2014, causing a substantial devaluation of the company.

After the circuit court's ruling, only a few counterclaims remained. Poblocki voluntarily dismissed most, leaving a single claim, which Drury agreed to resolve in order to expedite final resolution of the case.

Section 4.3 is entitled "Disclaimer of Other Representations and Warranties," and provides in relevant part:
Except as expressly set forth in this Article IV as qualified by the disclosure schedules, [the Sellers do not] make[ ] any other representation or warranty whatsoever, express or implied, at law or in equity, with respect to ... the business or the operations, assets, prospects or financial condition of the Company....
(Capitalization removed.)

Section 13.4 is entitled "Entire Agreement" and provides in relevant part:
This agreement (including the disclosure schedules and exhibits) ... constitute[s] the entire agreement among the parties relating to the subject matter of this agreement, and all prior agreements, correspondence, discussions and understandings of the parties (whether oral or written) are superseded, it being the intention of the parties that this agreement will serve as the complete and exclusive statement of the terms of their agreement with respect to the subject mater hereof. The parties agree that there have been and there are no other ... representations or warranties ... other than those set forth in this agreement, and that the parties are not relying upon any ... representations or warranties that are not set forth in this agreement. Any rights that the parties would otherwise have to assert contract, fraud, or other tort claims relating to any ... representations or warranties outside of this agreement are hereby waived....
(Capitalization removed.)

Section 9.5 of the Purchase Agreement makes contractual indemnification the parties' "sole remedy" for "any and all claims with respect to the transactions contemplated by this Agreement." However, the parties carved out an exception "in the case of fraud or willful conduct."

Section 6(a) of the Escrow Agreement provides in relevant part, "[O]n the first (1st) anniversary of the date hereof (the "Escrow Fund Distribution Date"), the Escrow Agent shall disburse to [Drury] ... the Escrow fund ... less the aggregate amount of the Reserve as of the Escrow Fund Distribution Date." The "date hereof" unequivocally was January 12, 2015-the date of closing. Therefore, the "Escrow Fund Distribution Date" was January 12, 2016. Because Poblocki did not submit its notice of claim before this date, there was no "Reserve" to hold back.

Section 9.4(f) of the Purchase Agreement provides in relevant part, "Each of the warranties and representations [in the Purchase Agreement] shall survive the Closing until the sixteen (16) month anniversary of the Closing Date."

To the extent we have not addressed an argument raised by Poblocki on appeal, the argument is deemed rejected. See State v. Waste Mgmt. of Wis., Inc. , 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).