TRANSAMERICAN FREIGHT LINES, INC., APPELLANT, *v.*
GATEWAY TRANSPORTATION COMPANY, APPELLEE.

(No. 56—Decided November 17, 1975.)

*Messrs. Pickrel, Schaeffer & Ebeling, Mr. Thomas
Haacke, Jr.,* and *Mr. William L. Havemann,* for appellant
Transamerican Freight Lines, Inc.

*Messrs. Rendigs, Fry, Kiely & Dennis, Mr. J. Kenneth
Meagher,* for appellee Gateway Transportation Company.

STRAUSBAUGH, J. This is an appeal by defendant Trans-
american Freight Lines, Inc., from the judgment of the
Court of Common Pleas of Warren County, dismissing
the cross-claim of Transamerican Freight Lines, Inc.,
against defendant, Gateway Transportation Company.
The record indicates that the parties hereto waived the
jury and submitted the matter to the trial court on an
agreed stipulation of facts, the deposition of defendant
Donald D. Mast, and the exhibits attached to such deposi-
tion.

The stipulation in principle part reads:

"'* * *

"(3) Transamerican Freight Lines, Inc. and Gateway Transportation Company are corporations engaged in interstate transportation of goods, by motor carrier, as authorized and governed by the rules and regulations of the Interstate Commerce Commission.

"(4) On August 5, 1970, and June 1, 1971, Donald D. Mast and Gateway Transportation Company entered into equipment lease agreements (Exhibit 1 and 2 of Mast's deposition), whereby Donald D. Mast agreed to lease a certain tractor and trailer, owned by him, to Gateway Transportation Company.

"(5) On July 27, 1971, Gateway Transportation Company and Transamerican Freight Lines, Inc. entered into a lease agreement (Exhibit 6) whereby Gateway Transportation and Donald D. Mast agreed to lease the tractor and trailer, owned by Donald D. Mast, to Transamerican Freight Lines, Inc. for a single trip to transport certain freight from Waukegan, Illinois, to Cincinnati, Ohio. The lease agreement provided that the tractor-trailer unit was to be operated by Donald D. Mast.

"(6) On July 28, 1971, while Donald D. Mast was transporting freight from Waukegan, Illinois, to Cincinnati, Ohio, pursuant to the aforesaid single trip lease agreement, the tractor-trailer, operated by Donald D. Mast, struck the rear of the motor vehicle operated by the plaintiff, David Lansaw, on Interstate 75 in Warren County, Ohio.

"(7) Transamerican Freight Lines, Inc., subsequent to the filing of plaintiffs' Complaint and its Cross-Claim against Gateway Transportation Company, settled in good faith with plaintiffs for the amount of $8,500.00 for the injuries and damages sustained by plaintiff in the above referenced accident. Accordingly, the Cross-Claim of Transamerican Freight Lines, Inc. shall be amended by adding a fifth paragraph and by amending the Wherefore clause as follows:

" '(5) Defendant, Transamerican Freight Lines, Inc., after the filing of the within action settled in good faith with plaintiffs for the amount of $8,500.00 and has caused payment to be made to plaintiffs in the aforesaid amount.

" 'WHEREFORE, Defendant, Transamerican Freight Lines, Inc., demands judgment against Gateway Transportation Company in the amount of $8,500.00, together with the costs and disbursements of this action and attorney fees incurred from September 6, 1973, the date upon which the within Cross-Claim was filed.'

"(8) In the event the court rules that Transamerican Freight Lines, Inc. is entitled to recover attorney fees, and the parties do not so stipulate, proof will be submitted as to the reasonableness and amount should the parties be unable to reach an agreement in this regard."

The record further indicates that the trip lease agreement was signed by Donald D. Mast, "authorized agent" of Gateway Transportation Company, "owner of the motor vehicle equipment." The lease form was prepared by Transamerican and provided, among other things, that Transamerican, during the term of the lease, had the control and responsibility for the operation of the leased equipment in respect to the public. Transamerican prepared door placards with Transamerican's I. C. C. authority number over the Gateway identification on the tractor prior to the tractor-trailer unit leaving Transamerican's terminal in Milwaukee, and such unit was inspected by Transamerican's agent.

Paragraph 9 of the trip lease contained an indemnity agreement requiring Gateway to indemnify Transamerican from all claims, suits and expenses arising out of any negligence on the part of Gateway, or any of its employees. It provides in part:

"Second Party (Gateway Transportation Company) hereby agreed to indemnify and save harmless First Party (Transamerican Freight Lines, Inc.) from any and all claims, suits, losses, fines or other expenses arising out of, based upon or incurred because of injury to any person or persons or damage to property sustained or which may be alleged to have been sustained by reason of any negligence or alleged negligence on the part of Second Party (Gateway Transportation Company), its agents, servants, or employees. * * * It is mutually understood and agreed

that Second Party (Gateway Transportation Company) will defend, at his own expense and cost, any and all suits that may be brought against the First Party (Transamerican Freight Lines, Inc.) for injuries sustained, including death resulting therefrom, or damage to property caused or alleged to have been caused by the negligenc of any person employed by Second Party (Gateway Transportation Company) while engaged in the performance of any of the work required by the terms and conditions of this agreement. * * * Nothing in this paragraph 9 contained shall be construed to in any wise limit the liability of the Party of the First Part (Transamerican Freight Lines, Inc.) to the public in connection with the use of said equipment under this agreement.''

The record further indicates that prior to subleasing the equipment to Transamerican, Mast had completed a haul for Gateway in Milwaukee. After making his delivery, Mast called Gateway's terminal to determine whether another load was available. No load was available, whereupon, Glick, the terminal manager for Milwaukee Steel Division of Gateway Transportation Company, authorized Mast to trip lease to Transamerican. Upon receiving the verbal authorization from Gateway, Mast drove the tractor-trailer unit to the Transamerican terminal in Milwaukee, where he entered into a trip lease agreement with Transamerican. Mast then loaded his vehicle in Waukeegan and was on his way to Cincinnati to make his delivery when the accident occurred.

The plaintiff originally brought suit against Mast and Transamerican Freight Lines, Inc., for his personal injuries, subsequently joining Gateway Transportation Company as a party defendant. Transamerican filed a cross-claim against Gateway for indemnity, based upon the idemnity agreement provided in paragraph 9 of the single trip lease agreement. Transamerican settled with plaintiffs for $8,500 for injuries sustained by plaintiff, at which time Gateway then filed a cross-claim against Mast, claiming that if Gateway was liable to Transamerican, then Mast is liable to Gateway, by virtue of an indemnity agreement in Mast's

lease agreement with Gateway. On April 4, 1974, a dismissal entry was filed dismissing the action between plaintiff Lansaw against Transamerican Freight Lines with prejudice, the plaintiff voluntarily withdrawing his complaint against Gateway Transportation Company. The dismissal entry provided that the action was to proceed on the cross-claim of defendant Transamerican Freight Lines, Inc., against Gateway Transportation Company, and the cross-claim of Gateway Transportation Company against defendant, Donald Mast. The trial court ruled that " * * * it is the conclusion of this court that the indemnity provision subject lease agreement are unenforceable," and ordered that the cross-claim of Transamerican Freight Lines, Inc., against Gateway be dismissed on the merits and ordered that the cross-claim of Gateway Transportation Company against Donald D. Mast be dismissed on the merits.

The trial court held:

"It is the opinion of the Court that Transamerican did have full physical possession and control of the equipment in this instance, but that that fact is not solely determinative of the issue. 49 C. F. R. Sec. 1057.4(a)(4) not only requires that the lessee accept full control of the equipment, but makes it further mandatory that the lessee undertake 'complete assumption of responsibility with respect thereto.' The practice of allowing said lessee to enter into indemnification agreements such as the one in question here would appear to be inimical to the lessee's 'complete assumption of responsibility,' and would negate the obvious purpose and intent of the statute. The Court is persuaded to this conclusion from its review of the various cases cited by counsel. * * *

"Accordingly, it is the conclusion of this Court that the indemnity provisions in the subject lease agreement are unenforceable. * * *"

Defendant Transamerican Freight Lines, Inc., lists four assignments of error:

"I. The judgment entered in the trial court dismissing the cross-claim of Transamerican Freight Lines, Inc. against Gateway Transportation Company was contrary to law.

"II. The judgment entered in the trial court dismissing the cross-claim of Transamerican Freight Lines, Inc. against Gateway Transportation Company is not sustained by the weight of the evidence.

"III. The judgment entered in the trial court dismissing the cross-claim of Transamerican Freight Lines, Inc. against Gateway Transportation Company is against the manifest weight of the evidence.

"IV. The trial court erred in refusing to grant appellant its attorney fees and expenses of suit."

The particular provision of the Interstate Commerce Commission regulation referred to in the decision of the trial court, 49 C. F. R., Section 1057.4 (a)(4), provides:

"Other than equipment exchanged between motor common carriers in interchange service as defined in §1057.5, authorized carriers may perform authorized transportation in or with equipment which they do not own only under the following conditions:

"(a) *Contract requirements.* The contract, lease, or other arrangement for the use of such equipment * * *.

"(4) *Exclusive possession and responsibilities.* Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, except * * *."

Gateway Transportation Company, in urging the correctness of the decision of the trial court, has cited a number of cases in support of its position. The court in *Alford* v. *Major* (C. A. 7, 1972), 470 F. 2d 132, affirmed the judgment of the United States District Court for the Northern District of Indiana holding that an indemnification clause, similar to the one in the instant case, was unenforceable, stating that although one of the objectives of the regulation in question was to furnish financially responsible defendants to injured members of the public, one of the paramount goals was highway safety, in order to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers and that such an indemnification clause would permit the lessee carrier to cir-

cumvent the regulations' requirement that leased carriers exert actual control over the leased equipment and the borrowed drivers.

The United States Court of Appeals, Fifth Circuit, held in *Simmon* v. *King* (C. A. 5, 1973), 478 F. 2d 857, that I. C. C. carrier's liability for equipment and drivers covered by leasing arrangements is not governed by the traditional common law master-servant relationships and respondeat superior following the case of *Alford* v. *Major, supra.*

The Supreme Court of Nebraska in *Denver Midwest Motor Freight, Inc.,* v. *Busboom Truck, Inc.* (1973), 190 Neb. 231, 207 N. W. 2d 368, held that an indemnification clause in a trip lease of operating equipment by a licensed motor carrier subject to I. C. C. regulations is an unenforceable clause as being against public policy.

The New Jersey District Court in *Gordon Leasing Co.* v. *Navaho Freight Lines* (1974), 130 N. J. Super. 290, 326 A. 2d 114, held that the indemnification clause similar to the one in this case, was unenforceable as controvening the public policy expressed in the I. C. C. regulations which they held to have the force and effect of law, and which cannot be evaded by lease provisions which attempt to exclude or limit their application.

On the other hand, there are cases which uphold the validity of such indemnification clauses. The United States Court of Appeals for the Fifth Circuit in *Allstate Ins. Co.* v. *Alterman Transport Lines, Inc.* (C. A. 5, 1972), 465 F. 2d 710, held at page 713:

"* * * [W]e find nothing in the language of 49 C. F. R. 1057.5(a)(4) which would prohibit two freely contracting parties from determining, as between themselves, which party will ultimately bear the cost of damages done to a third person. The only conceivable argument against such an arrangement would be that the regulation seeks to prevent indemnification on the theory that a trucking company, knowing it does not have to pay damages, might tend to be less careful in supervising and controlling the actions of the truck drivers. However, the same can be said of insurance coverage which the regulations obviously

do not prohibit. We are of the opinion that had the I. C. C. intended to prevent indemnification between trucking companies it would have said so in precise terms.''

The court in *Jones Truck Lines, Inc.*, v. *Ryder Truck Lines, Inc.* (C. A. 6, 1974), 507 F. 2d 100, 101, held that the argument that the indemnification provision in the lease is in conflict with 49 C. F. R., Section 1057.4(a)(4):

''* * * flies in the face of the express terms of the indemnification agreement which provides that the equipment under the lease 'is in the exclusive possession, control, and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public.' This provision is in conformity with the requirement of the regulation that a lease of equipment 'shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the Lessee for the duration of said contract, lease, or other arrangement.''

The court went on to cite with approval *Allstate Ins. Co.* v. *Alterman Transport Lines, Inc., supra,* and distinguished the facts in *Alford* v. *Major, supra,* on the ground that in *Alford* the indemnification agreement itself permitted the lessor to retain full control over the truck and driver during the full term of the lease in direct violation of the applicable I. C. C. regulations. The court went on to say, at 102:

''That the lessor in the present case agreed to reimburse the lessee for any losses in no way impairs the public's right of recourse against Ryder for damages caused by its operation of the truck in Louisiana. On the contrary, the indemnification agreement would appear to have the effect of strengthening the possibility of recovery by a third party in that it would provide another source or 'pocket' from which a recovery could be obtained. The argument that the indemnification provision would have the effect of making Ryder less careful in its operation of the vehicle in that it would enable Ryder to transfer its losses to Jones is unconvincing. * * *''

Again, the court in *Indiana Refrigerator Lines, Inc.,* v.

228

*Dalton* (C. A. 6, 1975), 516 F. 2d 795, held that the goals of the I. C. C. regulation imposing responsibility on carriers "are not undermined by enforcing the indemnification provision in this case." The court in that case noted that the Supreme Court of the United States has granted certiorari in *Wear* v. *Brada Miller Freight Systems, Inc.* (1975), 420 U. S. 971, a case in which the Seventh Circuit, in an unreported order, followed its earlier decision in the *Alford* case.

We are also in possession of and have noted the brief of the United States and the Interstate Commerce Commission, as Amicus Curiae, in *Transamerican Freight Lines, Inc.,* v. *Brada Miller Freight Systems, Inc.,* No. 74-54, wherein it is stated:

"The regulations do not refer to indemnification clauses. Each of the regulations applies whether or not the lease agreement contains an indemnification agreement, and the lessee can comply fully with each provision even though it seeks recourse against the lessor. The commission therefore submits that, so long as the lessee has complied with each of the provisions of the regulations, it is in conformity with them even though it has contracted for indemnification." (Page 22.)

In our examination of authorities, we find that the question before us has not been previously decided in this state. We further find that the authorities in other jurisdictions are divided but that the better view—that held by the United States Court of Appeals for the Sixth Circuit— is that so long as the lessee has complied with each of the provisions of the I. C. C. regulations, it is in conformity with such regulations even though it has contracted for indemnification from the lessor. We hold that there is nothing in the language of I. C. C. regulation 49 C. F. R., Section 1057.4(a)(4), which would prohibit two freely contracting parties from determining between themselves which party will ultimately bear the cost of damages done to a third person, where the lessee has complied with each of the provisions of the regulations and is in conformity with them. We find that the four assignments of error of

defendant, Transamerican Freight Lines, Inc., are each well taken and, therefore, are sustained. The judgment is reversed and the cause is remanded for further proceedings, in accordance with law and this decision.

*Judgment reversed.*

BUZZARD, and CRAWFORD, JJ., concur.

STRAUSBAUGH, J., of the Tenth Appellate District, sitting by designation in the First Appellate District.

CRAWFORD, J., retired, of the Second Appellate District, and BUZZARD, J., retired, of the Court of Common Pleas of Columbiana County, assigned to active duty under authority of Section 6(C), Article IV, Constitution, sitting by designation in the First Appellate District.