TELEDYNE OSCO STEEL, APPELLEE, ET AL., *v.* WOODS, D.B.A. J.B. WOODS TRUCKING, APPELLANT; CASE HEAVY HAULING, INC., APPELLEE.

(No. 4160 — Decided April 29, 1987.)

*Judy Fields* and *Clyde E. Thomas,* for appellee Teledyne Osco Steel.

*Stephen J. Handlovics,* for appellant James B. Woods.

*Robert F. Linton, Jr.,* for appellee Case Heavy Hauling, Inc.

GEORGE, J. Teledyne OSCO Steel, a division of Teledyne Industries, Inc., plaintiff, filed a complaint for accident damage caused to its tractor-trailer. Raymond J. Boyde, a second plaintiff, the driver of the Teledyne tractor-trailer, filed a complaint for the personal injuries he received out of that same accident. Case Heavy Hauling, Inc., appellee, and James B. Woods, d.b.a. J. B. Woods Trucking, appellant, were named defendants in both complaints. The Teledyne action and the Boyde action were consolidated.

Teledyne sought recovery for property damage caused when two wheels, which were bolted together, came off a moving tractor-trailer owned by Woods, while being driven by a Woods driver, Ken Resch. The Woods tractor-trailer carried Case's identification decals and was operating

under Case's Interstate Commerce Commission authority pursuant to a trip lease.

The complaints alleged Case and Woods were jointly or severally liable for their negligent operation and/or maintenance of the tractor-trailer from which the wheels separated. Case answered each complaint and cross-claimed against Woods seeking indemnification under the terms of the trip lease. Woods answered and denied the allegations of both complaints and the cross-claim. Woods then filed a third-party complaint against Great Dane Trailer, Inc. and Bud Company, seeking their indemnification or statutory contribution under R.C. 2307.31 and 2307.32.

Case filed a motion for summary judgment against Woods on its cross-claim. Woods filed a brief in opposition thereto and a hearing was held. The trial court granted Case's motion saying:

"The Court finds that there is no genuine issue of material fact and that Defendant Case Heavy Hauling is entitled to judgment as a matter of law. The Court finds that Defendant Case Heavy Hauling is entitled to indemnity from Defendant James Woods, d.b.a. Woods Trucking, under Paragraph 19(g) of the trip lease. See *Transamerican Freight Lines, Inc.* v. *Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28; *Transamerican Freight Lines, Inc.* v. *Gateway Transportation Co.* (1975), 46 Ohio App. 2d 220; *Brookridge Party Center, Inc.* v. *Fisher Foods, Inc.* (1983), 12 Ohio App. 3d 130. Accordingly, summary judgment is hereby granted in favor of Defendant Case Heavy Hauling. The Court finds that there is no just reason to delay the appeal of this issue; Civil Rule 54(B)."

Woods claims that the trial court erred in granting summary judgment in favor of Case on the basis of Paragraph 19(g) in the trip lease. Woods urges that a genuine issue of fact remains as to whether the damage and injury caused to the plaintiffs was the result of Case's own negligence by Case's failure to properly inspect Woods' equipment. Under the rationale of *George H. Dingledy Lumber Co.* v. *Erie RR. Co.* (1921), 102 Ohio St. 236, 131 N.E. 723, a negligent party will not be relieved from the consequences of its own negligence.

A general indemnification clause cannot relieve a negligent indemnitee from the results of its own failure to exercise ordinary care. Public policy requires that under such circumstances the indemnification clause must be strictly construed against the one seeking indemnity and indemnification will not be provided unless so expressed in clear and unequivocal language. *Dingledy, supra,* and *Kay* v. *Pennsylvania Rd. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417, 103 N.E. 2d 751.

Boyde was operating the Teledyne tractor-trailer westbound and Resch was operating the Woods tractor-trailer eastbound. A pair of wheels from the Woods vehicle separated from its trailer, crossed the median, and struck the Teledyne vehicle.

Woods leased its tractor-trailer to Case for the trip. The trip lease is a common arrangement for the lease of equipment between trucking companies. It is a recognized business practice and is anticipated within the regulations of the Interstate Commerce Commission. Part 1057, Title 49, C.F.R.

The trip lease provided, among other things, in Paragraph 19:

"(g) Lessor [Woods] hereby agrees to indemnify and save harmless Lessee [Case] from any and all claims, suits, losses, fines, or other expenses arising out of, based upon, or incurred because of injury to any person * * * or damage to property * * *[.]

"* * *

"(j) Lessor [Woods] agrees * * * to indemnify carrier [Case] against any losses in connection with this operation, however caused."

Under such arrangements, as that here, the owner of the equipment, Woods, grants the use of the tractor-trailer and his driver for a particular period to a certified carrier, Case, to transport Case's property for a consideration. See Section 1057.2(e), Title 49, C.F.R. Case was certified by the Interstate Commerce Commission and by entering into the lease agreement with Woods, vested Woods with the necessary authority to transport commodities interstate. Without the trip-lease arrangement, Woods was not certified to operate his tractor-trailer in interstate commerce. In accordance with the trip lease, Woods was to use Case's ICC certification and to display Case's identification decals.

The ICC regulations require that trip leases be in writing and provide that:

"* * * the authorized carrier lessee [Case] shall have exclusive possession, control, and use of equipment * * * [and] * * * shall assume complete responsibility * * * for the duration of the lease." Section 1057.12(c)(1), Title 49, C.F.R.

The trip lease included this "exclusive possession * * * [and] responsibility" requirement in accordance with the ICC regulations. Under this provision, responsibility for any loss would necessarily rest with Case. But here, the parties specifically allocated any possible loss to Woods under Paragraphs 19(g) and (j) of the trip lease. A like reallocation was approved in *Transamerican Freight Lines, Inc.* v. *Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28. The Supreme Court noted:

"Although one party is required by law to have control and responsibility for conditions of the vehicle, and to bear the consequences of any negligence, the party responsible in law to the injured or damaged person may seek indemnity from the party responsible in fact." *Id.* at 40.

In *Midwest Emery Freight System, Inc.* v. *V & P Carriers, Inc.* (E.D.N.Y. 1979), C.C.H. Fed. Carriers Cases, Paragraph 82,824, the court held that an indemnity agreement did not conflict with the applicable ICC leasing regulations. Specifically, the court noted that "there is no basis for the contention that the indemnification clause is against public policy as circumventing I.C.C.'s requirement that leased carriers exert actual control over the leased equipment and the borrowed driver." *Id.* at 58,099.

A practice has developed whereby certified and non-certificated carriers in the leasing of equipment have chosen to assign the transaction costs between themselves. So long as an indemnification does not violate concepts of public policy considerations and someone remains responsible, such agreements do not offend the ICC regulations. *Brada Miller, supra.*

In the *Brada Miller* case the United States Supreme Court held that a clause "whereby the lessor is to bear the burden of its own negligence does not, in and of itself offend the regulations." The indemnification clause in the *Brada Miller* case is identical to Paragraph 19(g) in the trip lease between Woods and Case. Additionally, the parties here further agreed that Woods would indemnify Case for any losses however they may be caused. Trip lease Paragraph 19(j). This language expresses a clear intent between the parties that Woods would be responsible for losses resulting from the operation under this trip lease whether caused by Woods' negligence or Case's negligence.

Unlike *Dingledy, supra,* and *Kay,*

*supra,* where, in a contract of indemnity, general words followed specific terms, in this case there was no qualifying language which might limit the extent of the indemnity. Also, see, *Glaspell* v. *Ohio Edison Co.* (1987), 29 Ohio St. 3d 44, 29 OBR 393, 505 N.E. 2d 264, where such an "indemnity clause agreed upon was a most reasonable allocation of the risks of doing business among fellow businesses." *Id.* at 47, 29 OBR at 396, 505 N.E. 2d at 267. Thus, a narrow interpretation is not required.

As in the cases previously cited, this trip lease apportioned the risk of loss between the parties. The lessor (Woods) was responsible for such losses and Woods agreed to indemnify the lessee, Case. Paragraphs 19(g) and (j) of the trip lease assigned any anticipated risk of loss to Woods, the owner of the vehicle who furnished the driver. Such an arrangement is not prohibited by the ICC regulations. *Brada Miller, supra,* and *Transamerican Freight Lines, Inc.* v. *Gateway Transp. Co.* (1975), 46 Ohio App. 2d 220, 75 O.O. 2d 379, 348 N.E. 2d 36.

Woods further urges that although the indemnity language may indicate Woods' need to indemnify Case, it is inapplicable because Case was either solely or concurrently negligent in causing the loss by failing to properly inspect the equipment. In view of Case's own negligence, public policy considerations as established in *Dingledy, supra,* would require that the indemnity clause be more closely scrutinized. However, taking the indemnity provisions of Paragraphs 19(g) and (j) together, it is clear that as between themselves, Woods and Case had agreed that any losses occasioned by the operation of the vehicle under the trip lease, however the loss was caused and regardless of who was negligent, would be Woods' responsibility. Hence, no genuine issue of fact remained for trial as between these parties.

Even *Dingledy, supra,* recognized that if the indemnity clause is written so that it covers the indemnitee's own negligence, it can do so. Under such circumstances, the intent must be plainly shown by the language used in the indemnity clause. *Glaspell, supra.* Here, the intent is shown in the words "however caused" in Paragraph 19(j) and, as shown, it meets the requisite standard.

The indemnity clause here, when strictly construed, does clearly and unequivocally require Woods to indemnify Case even if Case is also deemed to be negligent. No matter how the loss is caused, Woods has agreed to indemnify Case.

Since the trip lease clearly provided that Woods had agreed to indemnify Case for all losses, including those occasioned by Case's own negligence, there was no genuine issue of material fact remaining to be tried between Case and Woods. The indemnity trip lease required Woods to indemnify Case as a matter of law.

The trial court granted summary judgment based upon Paragraph 19(g). This court agrees that summary judgment was proper when that clause is considered along with Paragraph 19(j). The assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and CACIOPPO, J., concur.