[Cite as *Rashid v. McClymonds Bldg. Ents., Ltd.*, 2019-Ohio-2817.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL J. RASHID | JUDGES:<br>Hon. W. Scott Gwin, P.J |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case Nos. 2018CA00104 and<br>2018CA00139 |
| MCCLYMONDS BUILDING<br>ENTERPRISES, LTD. | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:    Appeal from the Stark County Court of
                              Common Pleas, Case No. 2017CV01096

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       July 8, 2019

APPEARANCES:

For Plaintiff-Appellee          For Defendant-Appellant

STACIE L. ROTH, ESQ.            CARI FUSCO EVANS, ESQ.
Allen Schulman & Associates     Fischer, Evans & Robbins, Ltd.
236 Third Street, S.W.          3521 Whipple Avenue, N.W.
Canton, Ohio  44702             Canton, Ohio  44718

*Hoffman, J.*

**{¶1}** Defendant-appellant McClymonds Building Enterprises, Ltd. ("McClymonds") appeals the September 5, 2018 Judgment Entry entered by the Stark County Court of Common Pleas, which denied its motion for judgment notwithstanding the verdict after a jury found it liable to plaintiff-appellee Michael Rashid ("Rashid") for negligence.

STATEMENT OF THE FACTS AND CASE

**{¶2}** In April, 2013, Rashid and 37 Erie, LLC entered into a commercial lease agreement ("the Lease") with McClymonds to rent a portion of the McClymonds Building, located at 37 North Erie Street, SW, Massillon, Ohio. Rashid intended to reopen the Alibi Sports Bar, which his uncle had operated at the same location for nearly thirty years.

**{¶3}** The McClymonds Building was undergoing renovations at the time the parties entered into the Lease. Pursuant to the terms of the Lease, Rashid and McClymonds were obligated to complete specific work on the property in order for the Alibi Sports Bar to reopen. Rashid and his crew commenced what was designated under the Lease as "Tenant's Work" at the beginning of August, 2013. McClymonds had placed a dumpster at the bottom of the staircase located at the back of the building. Rashid and his workers used the dumpster to dispose of materials they had removed from the premises during the renovations. Rashid had used the back staircase numerous times to access the dumpster and had relied upon the handrail when he did so.

**{¶4}** On August 19, 2013, Rashid arrived at the premises at approximately 8 p.m. His crew was working on flooring, woodwork, and clean up at the time. Rashid exited the rear door to determine whether there was room in the dumpster to discard the old carpeting. Rashid started down the stairs, reaching for the handrail. Unbeknownst to

him, McClymonds had replaced the staircase, but did not install a handrail at the time. Rashid fell 12 to 15 feet into the stairwell leading to the basement of the building. Rashid suffered injuries to his legs and back as a result of the fall.

{¶5} On May 23, 2017, Rashid refiled a Complaint against McClymonds, alleging negligence and seeking compensatory damages for the injuries he sustained as a result of the August 19, 2013.[1] McClymonds filed a motion for summary judgment on September 29, 2017. Therein, McClymonds asserted it was entitled to summary judgment because it lacked any duty to protect Rashid pursuant to the terms of the Lease, the rule of caveat emptor, and the fact the condition was open and obvious. Rashid requested an extension of time in which to file his memorandum in opposition, which the trial court granted. Rashid filed his response to McClymonds' motion for summary judgment on February 7, 2018. Via Judgment Entry filed February 22, 2018, the trial court denied McClymonds' motion, finding genuine issues of material fact existed; therefore, McClymonds was not entitled to judgment as a matter of law.

{¶6} On April 20, 2018, McClymonds filed a motion for reconsideration/clarification of motion for summary judgment, requesting the trial court make a determination as to the relationship of the parties. Rashid filed a response on May 3, 2018. The trial court conducted a hearing on the motion. Via Judgment Entry filed June 20, 2018, the trial court found Rashid to be a licensee, not a commercial tenant, at the time of his fall. The trial court further found the waiver provision in the Lease did not bar Rashid's claims.

---

[1] The original Complaint was filed in 2015, and dismissed without prejudice on June 17, 2016.

**{¶7}** It is from this judgment entry, McClymonds appeals, raising the following assignments of error:

I. THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT OR A DIRECTED VERDICT IN FAVOR OF MCCLYMONDS BASED ON THE OPEN AND OBVIOUS NATURE OF THE LACK OF A HANDRAILING AT THE MCCLYMONDS BUILDING AND THE LACK OF ANY DUTY TO WARN PLAINTIFF.

II. THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT OR A DIRECTED VERDICT IN FAVOR OF MCCLYMONDS DUE TO THE HOLD HARMLESS PROVISION AGREED TO BY PLAINTIFF IN THE COMMERCIAL LEASE BETWEEN THE PARTIES.

III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ADMITTING EVIDENCE THAT PLAINTIFF DID NOT HAVE HEALTH INSURANCE [AND] WAS NOT ABLE TO PAY FOR PAST AND FUTURE MEDICAL EXPENSES REQUIRING A NEW TRIAL.

IV. THE VERDICT IN FAVOR OF PLAINTIFF WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BASED UPON THE OPEN AND OBVIOUS NATURE OF THE ALLEGED HAZARDOUS CONDITION AND THE RECKLESS STANDARD THAT WAS TO BE APPLIED, AND THE VERDICT WAS THE RESULT OF PASSION AND PREJUDICE DRIVEN BY THE JURY'S KNOWLEDGE OF PLAINTIFF'S LACK OF HEALTH INSURANCE.

V. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO REDUCE THE JURY'S VERDICT TO ACCOUNT FOR THEIR ALLOCATION OF COMPARATIVE FAULT TO PLAINTIFF AS IDENTIFIED IN THEIR RESPONSES TO JURY INTERROGATORIES.

II

**{¶8}** For ease of discussion, we elect to address McCymonds' second assignment of error first. In its second assignment of error, McClymonds asserts the trial court erred in failing to grant summary judgment or, alternatively, grant a directed verdict in its favor based upon the hold harmless provision in the Lease. Specifically, McClymonds claims the Lease not only provided Rashid enter the property at his own risk and be solely responsible for any injuries sustained, but also he waive any claims for liability against McClymonds. We disagree.

**{¶9}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, this Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

**{¶10}** Civ.R. 56 provides summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary

judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

**{¶11}** Similar to a Civ.R. 56 motion for summary judgment, a motion for a directed verdict can only be granted if, after construing the evidence most favorably to the nonmoving party, reasonable minds could come to but one conclusion upon the evidence submitted.   Civ.R. 50(A)(4); *Ohio Cas. Ins. Co. v. D&J Distrib. & Mfg., Inc.,* 6th Dist. Lucas No. L-08-1104, 2009-Ohio-3806, ¶ 29.

**{¶12}** "Indemnity" is defined as arising from "contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid to require reimbursement." *Worth v. Aetna Cas. & Sur. Co.,* 32 Ohio St.3d 238, 240, 513 N.E.2d 253 (1987). In other words, when a person is secondarily liable due to his relationship to the other party, and is compelled to pay damages to an injured party, he may recoup his loss for the entire amount of damages paid from the one who is actually at fault, and who, in fact, caused the injuries. See, *Globe Indemn. Co. v. Schmitt,* 142 Ohio St. 595, 603, 53 N.E .2d 790 (1944).   The Ohio Supreme Court has mandated indemnity contracts be strictly construed. *Griggy v. Edwards Motors, Inc.*, 5th Dist. Licking No. CA-3684, 1992 WL 61580 (Mar. 11, 1992)*2, citing *Kay v. Pennsylvania RR. Co.*, 156 Ohio St. 503 (1952). "Additionally, the intention to provide such indemnification must be set forth in clear, unequivocal terms." *Id.*

**{¶13}** "A general indemnification clause cannot relieve a negligent indemnitee from the results of its own failure to exercise ordinary care. Public policy requires that under such circumstances the indemnification clause must be strictly construed against the one seeking indemnity and indemnification will not be provided unless so expressed

in clear and unequivocal language." *Teledyne Osco Steel v. Woods*, 39 Ohio App.3d 145 (1987), citing, *George H. Dingledy Lumber Co. v. Erie RR. Co.*, 102 Ohio St. 236, 131 N.E. 723 (1921); *Kay v. Pennsylvania RR. Co.*, supra at paras. one and two of the syllabus. Put another way, an indemnity agreement which purports to relieve a party from the consequences of that party's own negligence is unenforceable if it fails to express such an intent in clear and unequivocal terms. "A negligent party will not be relieved from the consequences of its own negligence." *Id.*

{¶14} The Lease provides, in relevant part:

§ 14. *Indemnification of Landlord.*

Tenant shall indemnify Landlord and save it harmless from and against * * * actions, damages, liability and expenses in connection with loss of life, personal injury and/or damage to property arising from or out of any occurrence in, upon or at the Premises, or any part thereof, or occasioned wholly or in part by any act or omission of the Tenant, its agents, contractors, employees, servants, lessees, or concessionaires. In case Landlord shall, without fault on its part, be made a party to any litigation commenced by or against Tenant, then Tenant shall protect and hold Landlord harmless and shall pay all costs and expenses incurred or paid by * * * Landlord in connection with such litigation. * * *

{¶15} We find the indemnification clause set forth in the Lease does not express, in clear and unequivocal language, an intent to relieve McClymonds from the

consequences of its own negligence.  The language requiring Rashid, as Tenant, to "pay all costs and expenses incurred or paid by" McClymonds, as Landlord, further suggests there was no intent to relieve McClymonds of such.

{¶16}  McClymonds' second assignment of error is overruled.

I.

{¶17}  In its first assignment of error, McClymonds contends the trial court erred in failing to grant summary judgment or, alternatively, grant a directed verdict in its favor based upon the open and obvious nature of the lack of the handrail as well as the fact McClymonds did not owe a duty to warn Rashid.

{¶18}  Our standards of review are set forth, supra.

{¶19}  A premises owner owes no duty to persons entering the premises regarding dangers which are open and obvious. *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, paragraph 5 of the syllabus (Citation omitted.) The rationale of the open and obvious doctrine is the open and obvious nature of the hazard itself serves as a warning, so that an owner may reasonably expect those entering the property to discover the hazard and take appropriate measures to protect themselves against it. *Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 644, 597 N.E.2d 504 (1992).

{¶20}  The open and obvious doctrine addresses only the question of duty, without analyzing the actions of the landowner or of the plaintiff. The Supreme Court explained the open and obvious nature of the hazard itself is the warning, and an owner or occupier may reasonably expect persons entering the premises will discover the dangers and take appropriate measures to protect themselves. *Armstrong,* supra, para. 5 (Citation omitted).

**{¶21}** An exception to the open and obvious doctrine is the existence of attendant circumstances. *Aycock v. Sandy Valley Church of God*, 5th Dist. Tuscarawas No. 2006AP090054, 2008-Ohio-105, 2008 WL 115829. These attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and may create a genuine issue of material fact as to whether a hazard is open and obvious. *Id.* For this exception to apply, an attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury. *Bovetsky v. Marc Glassman, Inc.* 5th Dist. Stark No. 2016CA00122, 2016-Ohio-7863, 2016 WL 6906148.

**{¶22}** An attendant circumstance is a factor which contributes to the fall and is beyond the injured person's control. See *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (1996). "The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event." *Cash v. Cincinnati* (1981), 66 Ohio St.2d 319, 324, 421 N.E.2d 1275. An attendant circumstance has also been defined to include any distraction which would come to the attention of a person in the same circumstances and reduce the degree of care an ordinary person would have exercised at the time. *McGuire v. Sears, Roebuck & Co.* (1996), 118 Ohio App.3d 494, 499, 693 N.E.2d 807 (1996). Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. *Id.* at 498.

{¶23} We find there was sufficient evidence of attendant circumstances to create a genuine issue of material fact as to whether the lack of a handrail was an open and obvious danger, and the trial court did not err in denying McClymonds' motion for summary judgment. Similarly, we find, after construing the evidence most favorably to Rashid, reasonable minds could conclude, based upon the evidence submitted, attendant circumstances contributed to Rashid's fall.

{¶24} The evidence revealed Rashid had used the back stairs many times prior to his fall on August 19, 2013. Rashid indicated he always used the handrail when he traversed the stairs. On the day of the incident, Rashid opened the back door and stepped onto the landing, automatically reaching for the handrail he had come to expect to be present. Unbeknownst to Rashid, McClymonds had removed the old stairs and handrail and installed new stairs, but had not installed a new handrail. Rashid immediately fell off the stairs and into a basement stairwell, sustaining multiple injuries. Rashid testified he had not received any notice from McClymonds regarding the removal of the old stairs and installation of the new ones. The evidence further shows the way in which the back door swung open obscured Rashid's view of the fact the handrail was gone. We find all the foregoing constitute attendant circumstances which diverted Rashid's attention from the open and obvious danger.

{¶25} McClymonds also alleges Rashid's deposition testimony relative to the lighting condition at the time of his fall and his trial testimony regarding the same were inconsistent. During his deposition, Rashid stated he "couldn't see well enough to determine there wasn't a railing on the staircase", explaining, "I could see in front of me, but I couldn't see as far as the actual staircase." Deposition of Michael Rashid at 35-36.

At trial, Rashid indicated he thought it was dark out when the accident occurred. Rashid expounded:

> Well, it was the evening. It was dark. It had nothing to with – with me going outside, because I could see perfectly. * * *it was just all reaction time. When you reach for something, you assume it's there because it's always been there. And it really had nothing to do with the surroundings. Although, you know, there's plenty of parking lot lights and – surrounding lights, you know, that really didn't come into play. Tr. Vol. 2 at 90-91.

{¶26} On cross-examination, when asked whether he would have seen the missing hand rail if it had been daylight, Rashid answered, "It would have happened just the same as it did." *Id* at 126-127. Rashid's father testified the light over the backdoor platform was out, but a flashlight was unnecessary as there was sufficient ambient lighting to illuminate the area.

{¶27} We find Rashid's deposition testimony and trial testimony are not necessarily inconsistent. However, assuming, arguendo, they were, any inconsistency goes to Rashid's credibility. The jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, could believe or disbelieve all, part, or none of his testimony. The jury clearly found Rashid to be a credible witness.

{¶28} McClymonds' first assignment of error is overruled.

III.

**{¶29}** In its third assignment of error, McClymonds submits the trial court abused its discretion in admitting evidence Rashid did not have health insurance, and thus was unable pay for past and future medical expenses. McClymonds argues the trial court should have excluded the evidence pursuant to Evid. R. 411.

**{¶30}** Evid. R. 411 reads:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness.

**{¶31}** "The exclusionary effect of Evid R. 411 is to minimize any unfair prejudice resulting from knowledge of the existence of liability insurance. It is generally recognized that such information may influence juries to decide cases on whether or not money is available from an insurance company to pay a damage award." *Bletsh v. Parma Community Gen. Hosp.*, 8th Dist. No. No. 52204, 1987 WL 11980.

**{¶32}** Dr. Harold Cross, the orthopedic surgeon who treated Rashid, testified via video deposition. Dr. Cross detailed his initial examination of Rashid, his diagnosis, and treatment recommendations. Dr. Cross instructed Rashid to stay non-weight bearing for six to eight weeks. Rashid had follow-up appointments with Dr. Cross on September 17, November 5, and in December, 2013. Based upon Rashid's presentation at the

December, 2013 appointment, Dr. Cross recommended a CT scan and topical medication, and limited Rashid to weight-bearing as tolerated.  Dr. Cross did not see Rashid again until March, 2016.  Dr. Cross testified Rashid had not "followed up" with his recommendations.  Counsel for Rashid asked Dr. Cross if he discussed Rashid's failure to follow-up with him.  Dr. Cross answered, "I did actually * * * he said that he didn't have any health insurance and that's -- that's why he didn't follow up." Feb. 28, 2018 Deposition of Dr. Harold Steven Cross at 27.  Counsel for McClymonds moved to strike.  The trial court overruled McClymonds' objection.

**{¶33}** On cross-examination, counsel for McClymonds attempted to establish Rashid failed to mitigate his damages by repeatedly questioning Dr. Cross about the importance of a patient's compliance with prescribed treatment.  The testimony ran as follows:

Q.      * * * Doctor, would you agree with me that a patient's compliance with prescribed treatment is – is important for the best possible recovery and outcome?

A.      I would concede that, sure.

Q.      Sure.  Because, Doctor, if a patient doesn't comply with what you've prescribed and what you've ordered, that can negatively impact their – their recovery.  True?

A.      It can.  Some things are more than -- some more than others.

* * *

Q.      * * * [Rashid] was ordered to be strict non-weight bearing for at least six weeks, correct?

A.      Correct.

* * *

Q.      And he was also to elevate his leg at heart level, correct?

A.      He was, uh-huh.

Q.      You expected Mr. Rashid to comply with those orders. Fair?

A.      I do.

* * *

Q.      Okay.   Doctor, your next visit with Mr. Rashid was on September 17th, 2013.  And I believe the records indicate that at that time you – you ordered a bone scan.

* * *

Q.      And, Doctor, looking at your records, it's my understanding that that bone scan was never performed.

A.      It was never done.

* * *

Q.      And, again, from looking at your records, it's my understanding that not only did Mr. Rashid not obtain the bone scan, he did not partake in therapy, correct?

A.      No, I don't think he did.

Deposition of Dr. Harold Cross, pp. 39-41, 44-46.

**{¶34}** During his testimony, Rashid explained he did not follow Dr. Cross' recommendation he undergo a bone scan because, "That's when this whole thing unraveled. My health insurance provider declined it. And it as very, very costly, and I couldn't afford to have it done." Tr. Vol. 2 at 110-111. Counsel for McClymonds objected. The trial court ruled Rashid could testify he did not have the bone scan performed because of his health insurance, but could not say it was declined. Rashid subsequently testified he "temporarily" postponed his surgery "because I do not have health insurance." Tr. Vol. 2 at 121.

**{¶35}** Prior to instructing the jury, and outside the presence of the jury the trial court asked counsel for the parties if there was anything they wished to address. Counsel for Rashid asked the trial court to eliminate the mitigation instruction. The trial court expressed its willingness to exclude the instruction, stating it had not "[heard] anything that he failed to mitigate anything." Tr. Vol. 2 at 174. Counsel for McClymonds argued whether or not Rashid followed doctor's orders "falls within the category of mitigation." *Id.* The trial court cautioned if it allowed the mitigation instruction and McClymonds raised Rashid's failure to mitigate in closing arguments, it would allow counsel for Rashid to explain why Rashid failed to follow his doctor's orders.

**{¶36}** McClymonds submits, "[t]he Trial Court refused to let McClymonds argue that the failure to seek treatment was a failure to mitigate without further spoiling the jury with more testimony about health insurance * * * tied counsel's hands." Brief of Appellant at 12. We disagree and find the trial court did not abuse its discretion in allowing testimony Rashid lacked health insurance under these circumstances. McClymonds argued failure to mitigate as an affirmative defense. As the trial court noted, supra, if

McClymonds was permitted to assert Rashid failed to mitigate, Rashid would be allowed to explain why he had failed to do so. The evidence of Rashid's lack of health insurance was not admitted for the purpose of establishing McClymonds "acted negligently or otherwise wrongfully," but was "offered for another purpose," i.e., to explain the reason he did not follow his doctor's treatment plan. Accordingly, the evidence was not "not admissible" pursuant to Evid. R. 411.

**{¶37}** Further, it was within the trial court's discretion to decide whether the probative value of this testimony was substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). We cannot say the trial court's decision on this matter was arbitrary, unreasonable, or capricious; therefore, we overrule McClymonds' third assignment of error.

IV.

**{¶38}** In its fourth assignment of error, McClymonds challenges the jury's finding of recklessness, arguing such was against the manifest weight of the evidence and was based upon sympathy due to the trial court's admitting evidence Rashid did not have health insurance. We disagree.

**{¶39}** As an appellate court, we are not the trier of fact; instead, our role is to determine whether there is relevant, competent, and credible evidence upon which the factfinder could base its judgment. *Tennant v. Martin–Auer*, 188 Ohio App.3d 768, 936 N.E.2d 1013, 2010–Ohio–3489, ¶ 16, citing *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911. A reviewing court, in addressing a civil manifest weight challenge, must determine whether the finder of fact, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that the judgment

must be reversed and a new trial ordered. *See Hunter v. Green*, Coshocton App. No. 12–CA–2, 2012–Ohio–5801, 2012 WL 6094172, ¶ 25.

**{¶40}** McClymonds specifically argues the verdict was against the manifest weight of the evidence because the jury "clearly did not appreciate the level of care implicated by the recklessness standard and found that improvements to the stairs that left them 100% safer, but without handrails was reckless." Brief of Appellant at 20-21. However, the jury was not tasked with determining whether the improvements McClymonds made to the back stairs made the stairs "100% safer". Rather, the jury was asked to determine whether McClymonds was reckless in failing to install a handrail with the replacement stairs and without notice to Rashid and/or his workers.

**{¶41}** The trial court correctly instructed the jury as follows:

Conduct is in reckless disregard of the safety of another if the actor does an act, or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that the conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than a risk created by carelessness. Tr. Vol. 2 at 236.

**{¶42}** On cross-examination, Paul Doering, the owner and operator of McClymonds, agreed a handrail is a safety device and an important piece of safety equipment when traversing a set of stairs. Doering testified the drop from the back stair landing to the bottom of the basement stairwell was "just under 9 feet". Tr. Vol. 1 at 107.

Doering was aware Rashid and his workers were using the back stairs to access the dumpster. Doering indicated he advised Rashid and his father he would be replacing the back stair, and conceded it would be reckless not to so advise Rashid or erect some sort of barricade. Rashid testified he did not receive notice from McClymonds.

**{¶43}** The issue of whether Doering actually provided notice to Rashid goes to his credibility. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). As the trier of fact, the jury was free to accept or reject any or all of Doering's testimony. The jury apparently did not believe Doering's testimony about providing notice to Rashid and found McClymonds was reckless in not providing such notice. We find there was relevant, competent, and credible evidence upon which the jury could find McClymonds was reckless in failing to install a handrail with the replacement stairs without notice to Rashid and/or his workers.

**{¶44}** McClymonds further asserts the verdict was against the manifest weight of the evidence because the jury was driven by passion and prejudice. McClymonds explains the jury's verdict was based upon sympathy which resulted from the knowledge Rashid lacked health insurance, and was not based upon the evidence presented. McClymonds sets forth the same arguments it made in Assignment of Error III, supra. In addition, McClymonds relies upon conversations its counsel had with two jurors after the matter concluded. The jurors, who did not join in the verdict, "disclosed * * * the verdict was based solely on sympathy and was not based upon the law." Brief of Appellant at 13.

**{¶45}** First, the trial court instructed the jury to consider all the evidence without bias, sympathy, or prejudice. "A jury is presumed to follow the instructions given it by the court." *Pang v. Minch*, 53 Ohio St.3d 186, 187, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Further, any attempts to use the comments two jurors made to McClymonds' lawyer after the verdict was contrary to the aliunde rule set forth in Evid. R. 606(B). Under the aliunde rule, a jury's verdict may not be impeached by evidence from a member of the jury unless a foundation is laid by evidence aliunde. Evidence aliunde is extraneous, independent evidence of alleged misconduct based on the firsthand knowledge of someone who is not a juror. Evid.R. 606(B); *State v. Schiebel* (1990), 55 Ohio St.3d 71, 75, 564 N.E.2d 54; *Bentley v. Kremchek,* 1st Dist. No. C–040721, 2005–Ohio–3038, ¶ 3; *Wittman v. Akron,* 9th Dist. No. 21375, 2003–Ohio–5617, ¶ 6.

**{¶46}** McClymonds' fourth assignment of error is overruled.

V.

**{¶47}** In its final assignment of error, McClymonds maintains the trial court abused its discretion in failing to reduce the jury's verdict to account for their allocation of comparative fault to Rashid as identified in their responses to jury interrogatories.

**{¶48}** Civ. R. 49(B) provides, in pertinent part:

When the general verdict and the answers are consistent, the appropriate judgment upon the verdict and answers shall be entered pursuant to Rule 58. When one or more of the answers is inconsistent with the general verdict, judgment may be entered pursuant to Rule 58 in accordance with the answers, notwithstanding the general verdict, or the

court may return the jury for further consideration of its answers and verdict or may order a new trial.

**{¶49}** Interrogatory No. 3 asked:

HAS THE DEFENDANT PROVEN TO YOU, BY A PREPONDERANCE OF THE EVIDENCE, THAT PLAINTIFF FAILED TO EXERCISE ORDINARY CARE FOR HIS OWN SAFETY WHICH PROXIMATELY RESULTED IN HIS INJURIES?

**{¶50}** The jury responded, "No." The interrogatory was signed by six of the eight jurors. The jurors proceeded to answer Interrogatory No. 4, which instructed:

STATE THE PERCENTAGES OF FAULT, IF ANY, THAT DIRECTLY AND PROXIMATELY CAUSED INJURY TO PLAINTIFF.

**{¶51}** The jury answered:

PERCENTAGE OF FAULT, IF ANY, ATTRIBUTABLE TO DEFENDANT, MCCLYMONDS BUILDING ENTERPRISES, LTD:   71%

PERCENTAGE OF FAULT, IF ANY, ATTRIBUTABLE TO PLAINTIFF, MICHAEL RASHID: 29%[2]

---

[2] We note the jury's response to interrogatory No. 4 is arguably facially inconsistent with its response to interrogatory No. 3.

**{¶52}** Pursuant to the instructions on Interrogatory No. 4, the jury signed the general verdict in favor of Rashid and answered Interrogatory No. 5:

STATE THE TOTAL AMOUNT OF COMPENSATORY DAMAGES, PAST AND FUTURE, SUFFERED BY THE PLAINTIFF ***WITHOUT REGARD*** TO THE PLAINTIFF'S NEGLIGENCE. (Emphasis added).

STATE YOUR ANSWER IN INK. $212,700.

**{¶53}** The jury was not instructed to reduce the total amount of damages by the percentage of fault it attributed to Rashid. When the jury finished deliberating, the trial court read the interrogatories and the jury's responses. The trial court asked counsel for the parties if they wished to poll the jury or review the verdict forms. Counsel for McClymonds and counsel for Rashid each responded, "No". Thereafter, the trial court discharged the jury. McClymonds concedes it did not object to the responses, "but believed that the judgment would reduce the verdict by the specific amount of comparative fault attributed to [Rashid]." Brief of Appellant at 26. McClymonds' "belief" is not a substitute for timely raising the issue with the trial court.

**{¶54}** If McClymonds believed the general verdict and interrogatories were inconsistent, McClymonds should have objected prior to the jury being discharged. Where the inconsistencies between a general verdict and an interrogatory are apparent before the jury is discharged, the inconsistency is waived unless a party raises an objection prior to the jury's discharge. *Haehnlein v. Henry* (1987), 41 Ohio App.3d 233, 234, 535 N.E.2d 343 (1987); *Avondet v. Blankstein*, 118 Ohio App.3d 357, 368 (1997).

By failing to object before the jury is discharged, the party asserting the inconsistency fails to provide an opportunity for the court to allow the jury to remedy any discrepancy.

{¶55}   McClymonds did not alert the trial court to the alleged inconsistencies until filing her motion for judgment notwithstanding the verdict. By doing so, we find McClymonds has waived its right to object to any perceived inconsistencies between the general verdict and the interrogatories.

{¶56}   McClymonds' fifth assignment of error is overruled.

{¶57}   The judgment of the Stark County Court of Common Pleas is affirmed.


By: Hoffman, J.
Gwin, P.J.  and
Delaney, J. concur